# CHARLESTON.

A. D. BARLOW *v.* T. C. RUSSELL *et als.*

Submitted November 4, 1919. Decided November 11, 1919.

PARTNERSHIP—*Settlement of Accounts—Evidence.*
> A case involving only the settlement of partnership and mortgage accounts, and stating no new legal principle.

Appeal from Circuit Court, Randolph County.

Suit by A. D. Barlow against T. C. Russell and Dr. C. A. Barlow, consolidated with a suit by A. D. Barlow against J. B. Gum, and suit by "A. D. Barlow, petitioner, against Thomas C. Russell" and others, which by consent of all interested parties was by decree consolidated with the first two consolidated cases. Suit against defendant Gum and suit against "Thomas C. Russell" and others dismissed, reference to a commissioner, and, after rulings on exceptions to his report, etc., decree for defendant Russell for $372.24, and plaintiff appeals.

*Reversed and remanded.*

*W. B. & E. L. Maxwell,* for appellant.
*Samuel T. Spears,* for appellee.

LYNCH, JUDGE:

The decree of which appellant, plaintiff below, complains upon this appeal required him to pay defendant T. C. Russell $372.24, with interest thereon from October 10, 1917; dismissed the suit brought by plaintiff against J. B. Gum, which upon Russell's motion the decree of October 11, 1910, consolidated with the suit of appellant against Russell and Dr. C. A. Barlow, and also dismissed what is styled in the caption and body thereof as "A. D. Barlow, Petitioner, against Thomas C. Russell," et als, which by consent of all the parties interested the decree of October 18, 1916, consolidated with the first two consolidated causes; required appellant to reconvey the unsold residue of the real estate conveyed by Russell to him by the deed of March 13, 1900, for the purposes therein specified; appointed Samuel T. Spears special commissioner to execute such a conveyance, should appellant fail or refuse to do so; and required appellant to pay Russell the costs of each of the three consolidated suits.

On or about May 1, 1899, Russell and Dr. C. A. Barlow, appellant's son and Russell's nephew, dissolved a partnership theretofore formed by them, the purpose of which was to establish and conduct upon equal terms a general mercantile store at Crickard, later known as Mill Creek, in Randolph County. The result of the dissolution, so far as disclosed, was the assumption by each of the former partners of liability for the payment of an equal share of the partnership indebtedness then existing, Russell to buy from his partner the one-half interest of the latter in the stock of merchandise for $4,219.14, for which he gave the firm his note. Dr. Barlow claims to have repurchased the stock of merchandise belonging to the business on February 28, 1900, and swears that on that date he and Russell settled all matters in difference between them pertaining to the firm, and in which settlement it was ascertained that an indebtedness existed in favor of Dr. Barlow in the sum of $1,106.59, for which Russell then executed his note, to secure the payment

of which he gave a deed of trust on certain real estate situate in or near Mill Creek.

On March 13th of the same year Russell executed to A. D. Barlow the deed of that date, heretofore referred to, for the real estate therein described and all his "personal property of every kind and character, together with all judgments, notes, accounts, liens or other evidences of debt, * * * as well as his interest in the Huttonsville & Marlington Telephone Company, together with his horses, wagons, and all other personal property, whether named herein or not." The consideration for the property conveyed by the deed, as therein expressly stipulated, was the grantee's assumption of liability for the indebtedness contracted by Russell with the firms, corporations and persons therein named, and, although on its face absolute and unqualified as to the extent of the title conferred, was intended to be a mortgage to protect the grantee in the payment of the debts assumed by him, as the parties to this litigation concede and as the collateral agreement entered into at the same time by the parties to the deed shows.

Having performed the trust reposed in him, appellant claims that two settlements of his accounts with Russell were made by the joint concurrence of the parties directly interested therein; by the first of which, made on June 12, 1901, it appears that Russell's indebtedness to appellant was $4,313.05, and by the second, made October 27, 1903, it was $3,377.36, the difference being due to the application of the proceeds of collections made by Barlow in the interim from the property conveyed by the deed. For each of the balances so ascertained Russell executed his notes to appellant, who surrendered the first one to Russell on the execution of the second, the latter forming the real basis of the suit of appellant against Russell and C. A. Barlow.

This suit plaintiff brought February 2, 1910, and filed the bill at April rules thereafter, and in it alleged the execution of the deed of March 13, 1900, set forth its true character and purpose as being a security for the reimbursement of appellant for the money advanced by him to liquidate the indebtedness contracted by the grantor and specified therein, and the settlements of the accounts arising out of the transactions between the parties in respect of such purpose and intent, and the ascertain-

ment on October 27, 1903, of the balance of $3,377.36 due the grantee as of that date by reason of such matters, and the execution of the note therefor and the nonpayment thereof at the date of the institution of the suit, and other matters and things not necessary now to detail, and prayed a reference to a commissioner in chancery to ascertain and report the amount due the plaintiff upon the note of October 27, 1903, the residue of the real estate conveyed by the deed of March 13, 1900, the liens on such residue, their amounts and priorities, and the owners of such liens; and prays a sale of such portion of the land then remaining unsold as may be necessary to satisfy the balance of the plaintiff's lien thereon, and for a decree against the grantor, should the proceeds of such sale prove insufficient to reimburse him; and for general and special relief.

The object of the bill filed by appellant against Gum and Russell was to enforce the lien of a judgment recovered by appellant for the balance due upon a contract of sale of certain real estate owned by Russell and by him sold to Gum, which balance Russell assigned to appellant in the deed of March 13, 1900. These two causes the decree of August 11, 1910, as we have said, consolidated upon the motion of Russell, and referred them to W. E. Baker, a commissioner of the Circuit Court of Randolph County, to state the account prayed in the bill filed by appellant in the first cause; who made and filed his report May 11, 1914, to which appellant filed fifteen and Russell two exceptions.

The report so made and filed stated the accounts in a double aspect, under the first of which the commissioner found and reported a balance of $1,687.26 due Russell, and under the second a balance of $3,844.09 due appellant. Without stating specifically by number the exceptions of plaintiff sustained by the decree of October 18, 1916, predicated upon and construed in connection with the written opinion of the presiding judge, made a part of the record, it found the report to be erroneous in its first aspect because it ignored the settlement made by the parties themselves in 1903, whereby they ascertained a balance of $3,377.36 due appellant, no part or item entering into the computation being surcharged or falsified by the answer of Russell theretofore filed in response to plaintiff's bill; sustained both of Russell's exceptions; recommitted the causes to

the same commissioner for a restatement of the accounts upon
the basis of the settlement of October 27, 1903, and "upon the
theory of the opinion" so filed, and "to take proof of and ascer-
tain any of the additional matters as directed by the opinion";
and granted leave to either party to "file before said commis-
sioner such pleadings as he may desire in accordance with said
opinion." Taking advantage of the opportunity thus afforded
him, indeed suggested by the court in its opinion, Russell filed
with the commissioner an amended answer in which he attempted
to surcharge and falsify some of the items of the account in-
volved, and assailed as incorrect the omission of certain items
from the settlement of 1903 which he claims should have been
credited to him.

To the findings of the report made pursuant to the order of
recommittal and filed October 15, 1917, of a balance of $3,189.25
due as of that date from appellant to Russell the former again
excepted, and in passing upon the exceptions so taken the decree
of May 24, 1918, the one now reviewed, sustained two, and
found the balance due Russell to be $372.24, and ordered appel-
lant to pay him that amount with interest thereon from October
10, 1917, until paid.

The first assignment of error relied on by appellant is the
action of the court below in overruling his sixth exception to
the second report of the commissioner. That exception chal-
lenged the propriety of the allowance therein of a credit to
Russell for $1,882.23, which with interest to the date of the
report aggregated $3,866.10, for his share in the stock of mer-
chandise and other property owned and used by the partner-
ship composed of himself and C. A. Barlow, but which thereto-
fore had passed to the latter by the sale of February 28, 1900,
or to A. D. Barlow on March 13th of the same year. Whether
to the one or the other there is some conflict in the testimony,
but in view of the facts of the case it seems wholly immaterial
to which of them it passed, so far as concerns the merits of the
controversy. The suit, by the consent of all the parties and
with the permission of the court, broadened to admit a state-
ment of the accounts between Russell and both the Barlows,
and if either of them has given Russell credit for his interest
in the stock of merchandise, he cannot reasonably complain.

As tending to show that Russell did receive credit for the amount claimed, appellant cites the settlement had on February 28, 1900, between defendant and Dr. Barlow, and insists, therefore, that it was error on the part of the commissioner to allow and the court to approve a further credit therefor by way of addition to the settlement of 1903. Defendant, however, vigorously denies that there was made or any attempt to make a settlement as of that date, and predicates his denial upon his intoxicated condition on that occasion, and his inability to participate therein intelligently for that reason. But the decree appealed from found against him and in favor of the validity and binding effect of the settlement and held it unimpeachable on either ground. That conclusion, we think, the evidence clearly warranted. Though Russell may have been intoxicated to some extent at that time, since that seems to have been his then normal condition, as he admits and his wife swears, yet he prudently procured for the purpose of adjusting the accounts the presence of Patrick Crickard, his wife's uncle, who admits his presence at that time for that purpose, and, although, when examined as a witness on behalf of Russell, he did not recall some of the attendant facts and circumstances, he did verify the testimony of other witnesses who were present, and testified to the fact that he also was there and participated in the settlement for and on behalf of Russell, and they all agree that it concerned the partnership dealings between the parties interested in this litigation. What is also significant, Russell acknowledged the receipt of $500 which Barlow swears he paid on that occasion, and for which he received credit in the settlement then made, and admitted the execution and delivery of a note for $1,106.59, the balance then found to be due Barlow, and of a trust deed to sucure the payment of the note, in which his wife joined as grantor, the execution of which both of them acknowledged before Crickard two days later. This note either Russell himself paid in whole or in part, or A. D. Barlow paid for him, and if the latter did so, he was entitled to and did receive credit therefor in the later settlement of 1903. Also, as a part of the settlement of February 28, 1900, Russell assigned his interest in certain partnership notes to C. A. Barlow, all of which but two the latter collected, and these two he produced and filed with

the commissioner, and they show Russell's endorsement thereon as of that date, and he swears the others would, if produced by the makers thereof to whom he delivered them upon receiving payment when due thereon. In view of these corroborating facts and circumstances clearly proved and confirmed by the decree, it seems unquestionable that there was such a settlement effected by the parties of the partnership transactions as of the date claimed by appellant, and such as irrevocably binds them unless surcharged and falsified under the forms prescribed by law

It then becomes necessary to determine whether Russell did receive credit in such settlement for his interest in the stock of merchandise owned by the partnership. Apparently the commissioner and the court found that he did not, because the former allowed and the court sustained a credit for $1,882.23, with interest, based on the same claim, to the allowance and confirmation of which appellant excepted. In so doing both erred to his prejudice as we believe.

On or about May 1, 1899, Dr. C. A. Barlow sold his half interest in the merchandise to Russell, for which the latter executed his note to the firm for $4,209.14, and delivered it to Barlow. The note was entered on the firm books under the account of T. C. Russell as a charge against him, and in closing his account upon the settlement of the partnership affairs February 28, 1900, it entered into the balance found due from him to the firm. This balance then was halved in order to ascertain his liability to Dr. Barlow. We mention this merely to show that under the system of bookkeeping employed by the partners the note given by Russell to the firm apparently covered the whole stock of merchandise, including his own half interest. In effect he was buying from the firm his own as well as Dr. Barlow's interest therein, but since his note was a firm asset, and since he was entitled to one-half of such assets upon final settlement, the result entailed no injury or prejudice to either of the parties. The note was not paid prior to the date of the settlement, but charging it to Russell in the final adjustment of the accounts virtually operated as a payment, and thereby vested in him the ownership of the entire stock of merchandise. Though Russell then, according to his own testimony, believed himself to be owner of only a half interest in the stock, prob-

ably because he had not theretofore paid the note, yet after being charged therewith he was indeed the owner of the whole stock, and as such resold the same to Dr. Barlow February 28, 1900, as part of the settlement of that date, at a price based upon an invoice of the goods determined a few days later to be $4,300, less a discount of 12 1-2%, leaving a net price of $3,762.50.

These observations merely lay the foundation for a more complete and satisfactory comprehension of the merits of appellant's exception regarding the right of Russell to credit for the $1,882.23 allowed him by the report and decree. In opposition to the allowance of such a credit, appellant cites and relies on a credit of $2,700 in Russell's favor given by Dr. Barlow in the settlement of February 28, 1900, in payment of the stock of merchandise that day repurchased from defendant. Evidently, however, this credit was not enough by $1,062.50. This insufficiency the Barlows later recognized and corrected to the extent of an additional credit of $353.17 entered March 21, 1900, on the account of A. D. Barlow, the equitable mortgagee, thus leaving a deficiency of $709.33, according to our calculation. These three credits, two of which were allowed, and the $709.33 which we think should be allowed for the reason stated, aggregate the amount of the invoiced value of the merchandise less the agreed discount, or $3,762.50. Our conclusion, therefore, is that it aldecree of the lower court is erroneous to the extent that it allowed credit for $1,882,23, when it should have allowed only $709.33 and interest thereon to the date of the report or decree, together with interest on the credit of $353.17 from February 28, 1900, to March 21st of that year.

In this connection it is convenient to consider and discuss out of its regular order Russell's first cross-assignment of error, as it involves a question similar to that with which we have been dealing. The decree complained of sustained plaintiff's second exception to the commissioner's report, and struck therefrom a credit in favor of Russell of $918.23 with interest thereon, upon the theory that it was improper to add such credit to the settlement of 1903, when it had been included and credited to him in the settlement of the partnership affairs on February 28, 1900. Russell in his amended answer and cross-assignment

claims the benefit of such credit as being the one-half of the sum advanced by him between May 1, 1899, and February 28, 1900, in payment of partnership debts previously incurred, which were to be borne equally by Dr. Barlow and himself. Appellant apparently admitted the responsibility of himself and son for that proportion of the debts, but claims that Russell received full credit therefor in the prior settlement, and the court so found. Such finding the proof sustains, for on page 343 of Ledger D, showing the account of the firm with Russell, the latter received credit for $1,836.45, the full amount which he claims to have paid, and the resulting balance of debits and credits on that page in favor of Dr. Barlow is equalized between them, thus giving to defendant the very credit which he now seeks. The ruling on this point, therefore, was correct.

The second assignment of error is based upon the overruling of appellant's third exception to the commissioner's report, because of the allowance of a credit of $90.36, with interest, to Russell. Among the assets of Russell transferred to A. D. Barlow by the mortgage of March 13, 1900, was a claim against W. H. Phares for land sold to him. It is Russell's contention that appellant collected on that claim the sum of $423.09 which should have been credited to the former instead of the smaller credit of $323.63 which he received. It is the difference between these amounts that Russell claimed and the decree allowed. The evidence on this point is conflicting. Russell swears he was entitled to the larger sum, and appellant does not expressly deny it, and does not satisfactorily explain why the smaller rather than the larger credit was given. Under the circumstances we decline to disturb that finding.

The third item allowed as a credit to Russell, of which appellant complains, is one of $246.66, with interest, collected by Russell from accounts owing to him, which collections he alleges he turned over to A. D. Barlow under the mortgage of March 13, 1900. It is appellant's contention that there is not the slightest evidence in the record to show that such a sum was turned over to him, and a careful search has revealed none. However, defendant's amended answer surcharging and falsifying the settlement of 1903 specifically names such sum as the amount collected and turned over by him to A. D. Barlow

and for which he should account. There is no replication denying this allegation. In the absence of such specific denial, and in view of the express finding of the commissioner, sustained as it is by the decree, the allowance thereof must stand.

The second cross-assignment of error of defendant involves a credit of $400, with interest, allowed by the commissioner but struck out by the court. The evidence respecting this item, though conflicting, was sufficient to warrant the action of the court in sustaining appellant's exception thereto, based as it was upon the ownership of the feed store involved. We are of opinion not to disturb the finding.

What we have already said sufficiently disposes of other assignments. As a result of sustaining the first assignment and striking out the credit allowed Russell of $1,882.23, with interest thereon, and substituting in lieu thereof a credit of $709.33, with interest, the decree in favor of Russell for $372.24 will necessarily change to one in appellant's favor. Our order, therefore, will reverse the decree of May 24, 1918, and remand the cause for further proceedings in accordance with this opinion.

*Reversed and remanded.*